# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **CHARLOTTE M. TAYLOR** | * | **CIVIL ACTION NO. 16-0465** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Charlotte Taylor protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on April 30, 2013. (Tr. 176, 136-146). She alleged disability as of October 31, 2012,[1] because of degenerative disc disease, diabetes, her "heart," scoliosis, her "arm," bulging discs, and high cholesterol. (Tr. 198). The state agency denied the claims at the initial stage of the administrative process. (Tr. 60-81, 91-94). Thereafter, Taylor requested and received a June 12, 2014, hearing before an Administrative Law Judge ("ALJ"). (Tr. 29-59). However, in an October 29, 2014, written decision, the ALJ

---

[1] Taylor filed prior applications that were denied initially in November 2009 and apparently not further appealed. (Tr. 176).

determined that Taylor was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a cashier/checker, fast food worker, and general office clerk. (Tr. 16-25). Taylor appealed the adverse decision to the Appeals Council. On February 5, 2016, however, the Appeals Council denied Taylor's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On April 6, 2016, Taylor sought review before this court. She contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ improperly relied on her own lay assessment of the medical evidence, and because her credibility assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

>   (4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

**I.   Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 21). At step two, she found that the claimant suffers severe impairments of status-post open reduction and internal fixation of the right humerus, hypertension, diabetes, and degenerative disc disease of the lumbar spine. (Tr. 21-22).[2] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No.

---

[2] She further found that the claimant's medically determinable impairment of obesity was non-severe. *Id*.

4, at step three of the process. (Tr. 22).

## II.     Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform the full range of light work.[3] (Tr. 22-24).

## III.    Step Four

At step four, with the assistance of a vocational expert, the ALJ, determined that the claimant was able to return to her past relevant work as a cashier/checker – light, Dictionary of Occupational Titles ("DOT") Code # 211.462-014; fast food worker – light, DOT Code # 311.472-010; and general office clerk – light, DOT Code # 219.362-010, both as she actually performed these jobs, and as they are performed generally in the national economy. (Tr. 24-25, 55-57).[4]

---

[3]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4]  Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

## Analysis

I. **Residual Functional Capacity Assessment**

    a)    <u>Non-Exhaustive Chronology of Pertinent Medical Evidence and Testimony</u>

A February 24, 2009, MRI of the lumbar spine showed minimal disc degenerative changes at the L4 level, with minimal bulging disc. (Tr. 255-256). The MRI otherwise was normal. *Id*. A February 16, 2009, MRI of the cervical spine showed a probable degenerative C5-C6 disc, but otherwise was negative. (Tr. 258).

A June 15, 2011, x-ray of the lumbar spine showed mild degenerative disc and joint disease (Tr. 265).

On October 4, 2011, Taylor complained of a sore on her right leg that would not heal. (Tr. 242-243). However, she exhibited a full range of motion in her joints. *Id*.

On April 25, 2012, Taylor reported low back pain and right hip pain. (Tr. 240-241). She was diagnosed with probable hypoglycemia episodes due to vomiting. *Id*.

On July 9, 2012, Taylor returned to E. A. Conway Medical Center and reported that she was doing well. (Tr. 281-282). Her only complaint was left upper quadrant abdominal pain. *Id*. She had been tolerating her medicines well. *Id*. She received diagnoses for diabetes and hypertension. *Id*.

On June 24, 2013, Taylor completed a function report in connection with her disability application. (Tr. 188-195). She indicated, *inter alia*, that she could not stand for more than two hours at a time. (Tr. 188). Furthermore, she could not "sit in one place" for more than two hours. *Id*. She also could not sleep a full night. *Id*. Her back and legs hurt no matter what she tried. *Id*. She typically tried to complete her house chores, but it took her all day to finish the cleaning. *Id*. It took her three hours to do the laundry and four hours to sweep and mop. *Id*. At

times, she had to lie down to obtain relief. *Id*. She could drive a car, but tried not to because it hurt to sit in one spot. *Id*. She shopped once or twice per week, or not at all. *Id*. She could only hunt and fish for about one hour at a time. *Id*. She could walk about one-quarter of a mile before needing to rest. *Id*. She could pay attention for 20-30 minutes at a time. *Id*.

Taylor noted that Dr. Robert Parker had suggested that she obtain a different job because of the pain in her feet, legs, and back. (Tr. 195). Taylor remarked, however, that she already had a "sit down job" that *seemed* not to work because her back still hurt. *Id*.

At the request of the state agency, Taylor underwent a consultative physical examination on August 10, 2013, with Charles Rogers, Jr., M.D. (Tr. 301-303). At that time, Taylor complained of degenerative disc disease, diabetes, heart problems, arm pain, and high cholesterol. *Id*. She reported lumbar disc disease with radiation of pain to both legs and intermittent numbness in both upper thighs. *Id*. She had fallen two weeks earlier, and experienced pain worse on the right, than the left. *Id*. She also had chronic dull pain in her left knee. *Id*. Her right upper arm had an internal fixation rod for a fracture from an auto accident. *Id*. She experienced exertional fatigue in her hand and frequent numbness that caused her to drop things. *Id*. She had edema to the mid-calf. *Id*. Taylor reported that she last worked as a secretary in October 2012. *Id*. She was able to dress and feed herself. *Id*. She could stand for 30 minutes, with frequent rests. *Id*. She could walk about 25 minutes before she became tired. *Id*. She could sit for 30 minutes. *Id*. She reported that she could lift about 20 pounds. *Id*. She neither cooked, nor did household chores. *Id*.

Upon examination, Taylor ambulated with mild difficulty. *Id*. She demonstrated little trouble getting on and off the examination table. *Id*. She walked on heels and toes and in tandem, heel-to-toe, but with pain in her left back. *Id*. Her grip strength was 5/5, bilaterally. *Id*.

Dr. Rogers noted crepitus in both knees. *Id*. She exhibited 4/5 muscle motor strength. *Id*. Her medial meniscus was 50 percent reduced in height with narrowing of the joint space. *Id*.

Dr. Rogers diagnosed degenerative disc disease with pain in her back and limited range of motion of pelvis due to pain. *Id*. The examination, however, did not support a functional limitation for work as a result of this impairment. *Id*. He also diagnosed diabetes and high cholesterol. *Id*. However medical records supported the finding that her sugar was fairly well-controlled. *Id*. Therefore, these impairments did not support a functional limitation for work. *Id*. Rogers further diagnosed heart problems that resulted in bilateral edema and frequent nocturnal urination, which supported a minimal functional limitation for work. *Id*. Finally, he diagnosed arm pain, which also supported no more than minimal functional limitation for work. *Id*.

On August 23, 2013, non-examining agency physician, Hollis Rogers, M.D., reviewed the record and agreed on an RFC for limited-light work, as proposed by the disability examiner.. (Tr. 304-305).

On August 26, 2013, the disability examiner issued an RFC for a light work limited by the ability to stand and/or walk for a total of four hours and with the ability to occasionally perform postural activities, except for climbing ladders, ropes, and scaffolds. (Tr. 66-68).

An August 20, 2013, chest x-ray showed mild chronic lung changes. (Tr. 327). A September 17, 2013, echocardiogram report confirmed no more than mild impairment. (Tr. 320-321).

At the June 12, 2014, hearing in this matter, Taylor testified that she daily experienced pain that ran down her lower back and into her legs. (Tr. 33). Sitting, propping up her legs, and trying to relax helped relieve the pain. (Tr. 33). She had not seen a doctor for her back pain in

about three years. (Tr. 33). She took one to two tablets of Tramadol every four to six hours for the pain. (Tr. 33-34). The Tramadol brought her back pain down to a six or seven (on a ten point scale), but makes her tired and sleepy. (Tr. 35-36). She became sick to her stomach about two to three times per week. (Tr. 34).

Taylor testified that she had difficulty bending over and standing for long periods of time. (Tr. 35). However, she was able to stand for about 30 minutes to one hour at a time. *Id*. She could sit for maybe one hour at most. (Tr. 36). She took Gabapentin for neuropathy. *Id*. She could walk for maybe 100 yards. (Tr. 37). She fell down about one month earlier because of back and/or leg pain. (Tr. 38). She could lift about ten pounds at most. (Tr. 38). She received only three to four hours of sleep at night, and had to take two naps each day. (Tr. 38-39). In addition, her blood sugar ran high, which made her sleepy and thirsty. (Tr. 40). She also had difficulty trying to reach overhead with her right arm. (Tr. 41). She swept and mopped, but had to take breaks. (Tr. 42). She went to the grocery store for about two hours, twice per month. (Tr. 43-44).

Taylor also told the ALJ that she was not then employed anywhere because her last employer had shuttered his business. (Tr. 44-45). She quickly added, however, that she also was not employed because of her disabilities. (Tr. 44-45). When the ALJ asked Taylor whether she had any problems performing her last secretarial-type job, plaintiff replied "a little bit," because she did not understand computers initially. *Id*. When the ALJ clarified her question to limit it to *any problems due to your disability*, Taylor replied that she had trouble sitting for very long, and that she had tried different chairs to no avail. *Id*.

b)    Discussion

In her decision, the ALJ reviewed the available evidence, including the hearing testimony,

9

plaintiff's activities of daily living, treatment records, and the impressions of the consultative physician, Dr. Charles Rogers. (Tr. 23-24). In deriving plaintiff's RFC, the ALJ resolved the opinion evidence as follows,

> [a]s for the opinion evidence, Dr. Rogers' opinion is afforded great weight, as the claimant retains normal mobility, normal neurological and organ functioning, and can perform her activities of daily living with minimal interference. There is no state agency physician's assessment in file.

(Tr. 24).

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, *inter alia*, because the ALJ purported to ground it upon the findings of the consultative physician, Charles Rogers, but Dr. Rogers did not actually quantify his limitations. Accordingly, plaintiff contends that, in effect, the ALJ simply issued her own lay opinion regarding the limitations caused by Taylor's impairments.

The court is not unsympathetic to plaintiff's argument. Frequently, when *no* medical provider has issued an opinion or medical source opinion regarding the effects of a claimant's impairments, the omission requires reversal and remand. However, the absence of a medical source statement, "does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In such a situation, the court's inquiry properly "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*.

In this case, Dr. Charles Rogers explicitly found *no* functional limitations as a result of plaintiff's degenerative disc disease in her back, her pelvic pain, her diabetes mellitus, and high cholesterol. He further opined that plaintiff's heart problems and arm pain resulted in *minimal*, but unspecified, functional limitation for work.

Moreover, while the ALJ correctly noted that the record does not contain a *formal*

10

assessment completed by a state agency physician, it *does* contain a statement issued by non-examining state agency physician, Hollis Rogers, M.D., whereby, following his review of the record, he agreed that the claimant retained an RFC for a limited range of light work as proposed by the disability examiner. (Tr. 304-305).

In addition – at least at times – plaintiff's own testimony supports the ability to perform a limited range of light work, or alternatively, work at the sedentary exertional level.[5] For instance, she indicated that she could stand and sit for up to two hours at a time. (Tr. 188-195). In addition, she could lift up to 20 pounds. (Tr. 301-303). Most tellingly, Taylor candidly, but briefly, admitted to the ALJ that the reason she no longer was working was because her last employer shuttered his business. (Tr. 44-45). Finally, while Taylor testified that she could no longer work at a sedentary job because her back pain prevented her from sitting for prolonged periods of time, the consultative physician did not endorse any limitations as a result of plaintiff's mild degenerative disc changes of the spine. In fact, even plaintiff's treating physician, Dr. Parker, suggested that she obtain a different job – not that she was completely disabled from all work. (Tr. 195).

In short, the court finds that the record contains substantial evidence to support the ALJ's RFC for light work, or at minimum, the lesser included RFC for a limited range of light work or sedentary work, which is consistent with the demands of plaintiff's past relevant work as a general office clerk/secretary – as she *actually* performed the job.[6]

---

[5] By finding that Taylor could perform light work, the agency and the ALJ effectively determined that she also was capable of *sedentary* work. *See* 20 C.F.R. § 404.1567(b).

[6] According to plaintiff, she answered service calls on the telephone and ordered parts. (Tr. 186). She had to walk for two hours, stand for two hours, and sit for four hours. *Id.*

11

Plaintiff further argues that the ALJ's credibility determination is not supported by substantial evidence. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that plaintiff was partially credible. (Tr. 23-24). In so deciding, the ALJ noted the inconsistencies between her complaints and the objective findings of the physicians upon examination. *See* Tr. 24. The ALJ's discussion meets the requirements of 20 C.F.R. § 404.1529, and her decision to partially credit plaintiff's allegations and thereby reduce her RFC to light work (or limited light/sedentary) is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).[7]

---

Crouching and stooping did not exceed 30 minutes. *Id*. She never lifted more than ten pounds. *Id*. Plaintiff also does not question that she performed this job at the substantial gainful activity level, or that she held the job long enough to learn how to do it.

[7] In *Anderson v. Sullivan*, the Fifth Circuit remarked that, "[t]he appellant's contention that the ALJ did not resolve the inconsistencies in the evidence is groundless . . . The appellant said he was in pain, there is substantial evidence to believe that he is not, and the ALJ resolved

## II.     Step Four

Aside from her challenge to the ALJ's residual functional capacity assessment, plaintiff does not raise any error specific to the ALJ's step four analysis.

## **Conclusion**

The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was by no means uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).[8] That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required,[9] and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination

---

these inconsistencies by disbelieving the appellant." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989).

   [8] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

   [9] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.[10] Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 7th day of February 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[10] The court has reviewed the district court opinions attached to plaintiff's memorandum. To the extent that the decisions are not inapposite or distinguishable, they remain non-binding.